**GOOD LAW, P.C.**
Gregory E. Good, SB # 014445
3430 E. Sunrise Drive, Suite 170
Tucson, Arizona 85718
Telephone: (520) 628-8221
Facsimile: (520) 547-0394

**HOWARD, PHILLIPS & ANDERSEN**
Gregory D. Phillips
560 East 200th Street, Suite 230
Salt Lake City, Utah 84102
Telephone: 801-366-7471
Facsimile: 801-366-7706
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **VOLVO TRADEMARK HOLDING AB**, a corporation organized under the laws of Sweden, and **VOLVO CARS OF NORTH AMERICA, L.L.C.**, a limited liability company organized under the laws of New Jersey,<br><br>                Plaintiffs,<br>v.<br><br>**AGA & SONS, INC.**, a corporation organized under the laws of Arizona, and **ANDREW ARAGON**, an individual and doing business as **REVOLVSTORE SERVICE CENTER, UNIQUE EUROPEAN AUTOMOTIVE L.L.C**, a limited liability company organized under the laws of Arizona, and doing business as **REVOLVSTORE VINTAGE VOLVO**, and **JOHN M. WHITE**, an individual,<br><br>                Defendants. | Civ. No.: 4:11-CV-00714-RCC<br><br><br>**MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES** |

1

Plaintiffs Volvo Trademark Holding AB and Volvo Cars of North America, L.L.C. (collectively "Volvo") move this Court to enter a preliminary injunction enjoining Defendants AGA & Sons, Inc., Andrew Aragon, dba Revolvstore Service Center, Unique European Automotive L.L.C., dba Revolvstore Vintage Volvo, and John M. White (collectively "Defendants") from infringing and violating Volvo's trademark rights. This motion is made pursuant to Fed.R.Civ.P. 65(a), and is based upon the Memorandum of Points and Authorities set forth below, the Verified Complaint and Exhibits thereto on file in this matter, and such further evidence and argument as may be presented at or before a hearing on this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Volvo's claims in this lawsuit arise out of Defendants' infringement and dilution of Volvo's world famous trademarks VOLVO® and the VOLVO IRON MARK LOGO® based upon (1) Defendants' unauthorized use of the trademark VOLVO® in Defendants' business names "Revolvstore Service Center" and "Revolvstore Vintage Volvo," (2) Defendants' unauthorized use of the trademark VOLVO® in Defendants' Internet domain names WWW.REVOLVSTORE.COM and WWW.REVOLVSTOREPARTS.COM, (3) Defendant's misappropriation of the VOLVO IRON MARK LOGO® on Defendants' websites, in signage, advertisements, and otherwise; and (4) Defendants' false advertisement that Defendants' mechanics are "Factory Trained" or "Certified Factory Trained" when they are not. For the convenience of the Court, an example of Defendants' use of a debased or bastardized version the world-famous VOLVO IRON MARK LOGO® is set forth below:



| U.S. Registration No. 0,636,128 | Defendants' Knock-off Logo |

Under well-settled case law, Volvo is highly likely to succeed on the merits of its claims given Defendants' deliberate infringement and dilution of Volvo's distinctive trademarks in a business that competes directly with Volvo and Volvo's authorized dealers. Moreover, the harms to Volvo's trademarks and associated goodwill are irreparable as a matter of law. For these reasons, and as explained in detail below, Volvo is entitled to a preliminary injunction.

## II.  FACTS

The following facts are established in the Verified Complaint and exhibits ("VC").

### A.  The Parties.

Volvo Trademark Holding AB is a corporation organized under the laws of Sweden with its principal place of business in Göteborg, Sweden, and Volvo Cars of North America, L.L.C. is a New Jersey limited liability company with its principal place of business in Rockleigh, New Jersey. VC at ¶¶ 6-7.

Defendant AGA & Sons, Inc. is a corporation organized under the laws of Arizona and has its principal place of business in Tucson, Arizona, and Defendant Andrew Aragon is an individual residing in Tucson, Arizona, and has registered, in his individual and personal capacity, the dba "Revolvstore Service Center." *Id.* at ¶¶ 8-9. Defendant Unique European Automotive L.L.C. is an Arizona Limited Liability Company with its principal place of business

3

in Tucson, Arizona and is doing business as "Revolvstore Vintage Volvo." *Id.* at ¶ 10. Defendant John M. White is an individual residing in Tucson, Arizona, and has registered and purports to be the registrant or owner of the domain names WWW.REVOLVSTORE.COM and WWW.REVOLVSTOREPARTS.COM. *Id.* at ¶ 11.

### B. Volvo's Trademark Rights.

Volvo obtained its first U.S. Trademark registrations for the trademarks VOLVO® and the VOLVO IRON MARK LOGO® in 1956, and Volvo now owns several United States trademark registrations for these trademarks (collectively the "VOLVO MARKS"). *Id.* at ¶ 13 and Ex. A. Such registrations are valid, unrevoked, subsisting, and incontestable, and constitute *prima facie* evidence of Volvo's exclusive ownership of the VOLVO MARKS. *Id.*

Volvo serves the sales and service needs of its retail automobile customers through a franchised dealer body of independent, authorized Volvo dealerships. *Id.* at ¶ 15. Volvo exercises great care and substantial effort to control the quality of services and goods that its authorized Volvo dealerships provide under the VOLVO MARKS. *Id.* Volvo and its authorized dealers are the only authorized providers of new vehicles and vehicle maintenance services under the VOLVO MARKS. *Id.*

The VOLVO MARKS are world-famous and distinctive, and have acquired distinctiveness as a consequence of Volvo's use and promotion of the marks worldwide.[1] *Id.* at ¶ 16. The VOLVO MARKS are immediately identifiable and associated by the general public with Volvo. *Id.* The VOLVO MARKS, and the goodwill associated with the VOLVO MARKS, are valuable assets of substantial and inestimable worth to Volvo, and are symbols of the high quality goods and services provided by Volvo and its authorized dealers. *Id.*

---

[1] As discussed below, courts have ruled that the VOLVO MARKS are famous.

**C.    Defendants' Violations of Volvo's Trademark Rights.**

Subsequent to Volvo's development and use of the VOLVO MARKS, and subsequent to Volvo's registrations of the same, and without the consent of Volvo, Defendants began using the VOLVO MARKS in connection with the advertising of Defendant's products and services. *Id.* at ¶ 17. Defendants use the business name "Revolvestore Service Center" which is an obvious reference to, and play on, the trademark VOLVO®, and also the business name "Revolvstore Vintage Volvo" which incorporates the trademark VOLVO®. *Id.* at ¶ 18. Defendants operate commercial websites at the Internet domain names WWW.REVOLVSTORE.COM and WWW.REVOLVSTOREPARTS.COM. *Id.* at ¶ 19.

Defendants have misappropriated a bastardized version of the VOLVO IRON MARK LOGO® on Defendants' websites, in signage, advertisements, and otherwise, as evidenced by the following side-by-side comparison:



| U.S. Registration No. 0,636,128 | Defendants' Knock-off Logo |
|---|---|

*Id.* at ¶ 20.

Defendants further falsely advertise that its mechanics are "Factory Trained" or "Factory Certified" when they are not. *Id.* at ¶ 21. To be considered "Factory Trained" or "Factory Certified" a technician must be employed by an authorized Volvo dealership and must be up-to-date on the very latest training modules. *Id.* Defendants are in no way affiliated with, authorized

by, or sponsored by Volvo and have no authority to use the VOLVO MARKS to identify Defendants' business, products, services, or goods. *Id.* at ¶ 22.

### D. Volvo is Being Irreparably Harmed.

Defendants' unauthorized use of the VOLVO MARKS in conjunction with the advertisement, promotion, and sale of Defendants' products and services constitutes a misappropriation of the VOLVO MARKS and associated goodwill, and is likely to cause potential purchasers of Defendants' products and services, as well as the public at large, to believe that Defendants' products and services are affiliated with, authorized, sponsored by, or endorsed by Volvo. *Id.* at ¶ 26. In addition, Defendants' wrongful use of the VOLVO MARKS, or confusingly similar versions thereof, dilutes, tarnishes, and whittles away the distinctiveness of the VOLVO MARKS. *Id.*

Volvo is being irreparably harmed by Defendants' conduct because the unauthorized use and display of the VOLVO MARKS by competitors of Volvo and its authorized dealers, such as Defendants, causes serious harm to Volvo inasmuch as it lessens the capacity of the VOLVO MARKS to designate Volvo and the goods and services provided by Volvo and its authorized dealers. *Id.* at ¶ 27. Volvo is further being harmed because Volvo is not able to exercise any control over the quality of services and goods provided by Defendants to the public. Id. For example, if Defendants provide shoddy service, Volvo is irreparably harmed because the customers of such shoddy service will no longer associate the VOLVO MARKS with the high-quality service and goodwill associated with the VOLVO MARKS. *Id.* Volvo also has no ability to demand or require that Defendants provide better quality services as Volvo has the ability to do with its authorized dealer body. *Id.* In short, if Volvo is not able to control the quality of the services and goods provided under the VOLVO MARKS by Defendants, Volvo

will be irreparably harmed because Volvo's reputation for high-quality service and products will be damaged. *Id.*

## III. VOLVO IS ENTITLED TO A PRELIMINARY INJUNCTION

In order to qualify for a preliminary injunction, Volvo "'must establish that [Volvo] is likely to succeed on the merits, that [Volvo] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [Volvo's] favor, and that an injunction is in the public interest.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009), *quoting Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008). Indeed, preliminary injunctions are routinely granted in cases under the Lanham Act because preliminary injunctive relief is "appropriate … to prevent irreparable injury to [the plaintiff's] interests in its trademark … and to promote the public interest in protecting trademarks generally." *Brookfield Communications. v. W. Coast Entertainment.*, 174 F.3d 1036, 1066 (9th Cir. 1999).

### A. Volvo is Likely to Succeed on the Merits of Its Lanham Act Claims.

Volvo alleges claims for federal trademark dilution, federal trademark infringement, false designation of origin or sponsorship, false advertising, and cyberpiracy under Sections 43(c), 32(1), 43(a), and 43(d) of the United States Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. §§ 1125(c), 1114(1), 1125(a), and 1125(d).

The essential elements of Volvo's claim for federal trademark infringement are (1) that Defendants have used in commerce a reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of goods or services (2) which is likely to cause confusion, or to cause mistake, or to deceive. *See* 15 U.S.C. § 1114(1)(a). Volvo is also likely to succeed on its false designation of origin and false

advertising claims because Section 43(a) of the Lanham broadly prohibits unfair competition based upon proof of a likelihood of consumer confusion. *See* 15 U.S.C. § 1125(a)(1); *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 244 (9th Cir. 1990).

Defendants' violations of Volvo's rights is not unique or novel, and well-established case law involving nearly identical violations demonstrates that Volvo is likely to succeed on its claims.[2]

---

[2] Rather than discuss the elements of trademark infringement, dilution, and cyberpiracy for each of the factual patterns at issue in this motion, Volvo easily satisfies the elements as discussed in the various cases cited in this memorandum for each of the factual patterns. The VOLVO MARKS are "distinctive and famous," and as one court recently ruled, "the VOLVO mark enjoys widespread recognition in the United States. The Court therefore concludes that the mark is famous." *Volvo Trademark Holding AB v. VOLVOSPARES.COM*, 703 F.Supp.2d 563, 568 (E.D.Va. 2010).

Although the Ninth Circuit has set forth a list of factors that may be considered in determining the likelihood of confusion, that court has also indicated that on a preliminary injunction motion the district court need not consider each factor, and the presence or absence of one or more crucial factors may be sufficient to support the entry of an injunction. *First Brands v. Fred Meyer*, 809 F.2d 1378, 1384 (9th Cir. 1987); *Sega Enterprises v. MAPHIA*, 948 F. Supp. 923, 937 (N.D. Cal. 1996) ("Because each of these factors is not necessarily relevant to every case, the list functions as a guide and is neither exhaustive nor conclusive.").

In this case, the relevant factors identified by the Ninth Circuit support a finding of likelihood of confusion, including: (a) the strength of the VOLVO MARKS; (b) the proximity or relatedness of the products; (c) the similarity of the sight, sound, and meaning of the marks; (d) similarity of marketing channels used; (e) the type of goods and the degree of care likely to be exercised by the purchaser; (f) evidence of actual confusion; and (g) the defendants' intent in adopting the mark. *See AMF. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979).[2]

Although all of these factors weigh in favor of a finding of a likelihood of confusion, it bears noting at the outset that the combination of a few of these factors in this case support a presumption of confusion. Thus, while "an intent to confuse consumers is not required for a finding of trademark infringement," *Brookfield*, 174 F.3d at 1059, "intent to deceive is strong evidence of a likelihood of confusion," *Interstellar Starship Services v. Epix Inc.*, 184 F.3d 1107, 1111 (9th Cir. 1999). "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *AMF*, 599 F.2d at 354 (citations omitted). *Entrepreneur Media. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002).

Some of these same factors apply to Volvo's cyberpiracy claims, *Volvo Trademark Holding AB v. VOLVOSPARES.COM*, 703 F.Supp.2d 563, 568 (E.D.Va. 2010), and to Volvo's dilution claims. *Porsche Cars North America, Inc. v. Manny's Porshop, Inc.*, 972 F. Supp. 1128, 1132 (N.D. Ill. 1997) (Porsche "need only show the mark is famous and defendants' use is likely

1. **Volvo is likely to succeed on its claims relating to the business names "Revolvstore" and "Revolvstore Vintage Volvo"**

An automobile manufacturer has the right to prohibit the use of its trademarks in the business name of a business providing parts and/or services for its automobiles. *See Porsche Cars North America, Inc. v. Manny's Porshop, Inc.*, 972 F. Supp. 1128 (N.D. Ill. 1997) (enjoining use of the name "Porshop" in name of automobile repair shop specializing in repair of Porsche cars); *Volkswagenwerk A.G. v. Brewer*, 170 U.S.P.Q. 560 (D. Ariz. 1971) (enjoining use of term "Volkscity Service Center" in name of repair shop specializing in servicing Volkswagens); *Volkswagenwerk A.G. v. Karadizian*, 170 U.S.P.Q. 565 (C.D. Cal. 1971) (enjoining use of the name "Volkswagen Village" on used car outlet, despite the fact that defendant used a disclaimer[3] stating "Used cars only; not a franchised Volkswagen dealer"); *Ford Motor Co. v. Helms*, 25 F. Supp. 698 (E.D. N.Y. 1938) (enjoining use of the trademark "Ford" on signage of independent dealer); *Ford Motor Co. v. Benjamin E. Boone, Inc.*, 244 F.

---

to cause dilution," and "[t]here is no requirement under the Act that [Porsche] show a likelihood of confusion" because "the Act prohibits even innocuous use.").

[3] Defendants may argue that because they display disclaimers on their websites that "Revolvstore Service is an independent company in no way affiliated with Volvo Cars North America" and "Revolvstore Parts Is An Independent Company And Is NOT Affiliated with Volvo of Tucson or Volvo Cars of North America," that Defendants' trademark violations are not causing confusion. The Ninth Circuit has rejected the use of disclaimers in trademark cases. *Automotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1077 (9th Cir. 2006) (rejecting infringer's argument that "disclaimers on its packaging dispel any potential for confusion"). Disclaimers are nothing more than "an acknowledgment that [defendant's] use of plaintiffs' marks ... is likely to cause confusion." *Pebble Beach Co. v. Tour 18 I Ltd*, 942 F. Supp. 1513, 513 n.35, (S.D. Tex. 1996), *aff'd*, 155 F.3d 526 (5th Cir. 1998). *See also PACCAR Inc. v. TeleScan Techs., LLC,* 319 F.3d 243, 253 (6th Cir. 2003) ("A disclaimer disavowing affiliation with the trademark owner read by a consumer after reaching the web site comes too late."); *Audi AG v. D'Amato*, 381 F. Supp.2d 644, 644 n.5 (E.D. Mich. 2005) (rejecting disclaimer as defense to charge of trademark infringement as matter of law), *aff'd* 469 F.3d 534, 546 (6th Cir. 2006); *Liquid Glass Enters., Inc. v. Dr. Ing. h.c.F. Porsche AG*, 8 F. Supp 2d. 398, 406 (D.N.J. 1998) (holding disclaimers are not effective and actually increase consumer confusion); *Volvo Trademark Holding AB v. VOLVOSPARES.COM*, 703 F.Supp.2d 563, 568 (E.D.Va. 2010) ("the disclaimer added to volvospares.com does not negate this confusion.").

335 (9th Cir. 1917) (enjoining use of the name "Ford Auto Agency" on signage of independent dealer). "[C]ourts have repeatedly held ... repair shops to be guilty of trademark infringement or unfair competition where ... such establishments use or imitate the manufacturer's name or mark in their trade names." *Manny's Porshop*, 972 F. Supp. 1128, 1131 (quoting *Dr. Ing. h.c.F. Porsche AG v. Zim*, 481 F.Supp. 1247, 1250 (N.D.Tex.1979)), because consumers naturally assume that the independent shop is affiliated with or somehow sponsored by the manufacturer.

*Manny's Porshop* is directly in point. In that case, the owner of an independent repair shop asserted that "Porshop" was significantly different from PORSCHE® and stood for "Performance Oriented Repair Shop." The court rejected the repair shop's argument, and granted Porsche's motion for a preliminary injunction based upon Porsche's claims for "trademark infringement (Count I), false designation of origin (Count II), and trademark dilution (Count III) under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), 1125(c)." 972 F.Supp. at 1129.

    **2.    Volvo is likely to succeed on its claims relating to WWW.REVOLVSTORE.COM and WWW.REVOLVSTOREPARTS.COM**

Again, in virtually identical situations, courts have ruled that use of a domain incorporating a well-known and famous trademark such as VOLVO® violates the trademark holder's rights. For example, in *Volvo Trademark Holding AB v. VOLVOSPARES.COM*, 703 F.Supp.2d 563, 569 (E.D.Va. 2010), the court granted Volvo's motion for summary judgment that WWW.VOLVOSPARES.COM hosting a website selling spare parts for Volvo® vehicles with a disclaimer that "Volvospares.com has no affiliation with Volvo Group and makes no claim to or implication of being associated in any official business capacity in conjunction with or for such companies" violated Volvo's rights. *See also, Audi AG v. D'Amato*, 469 F.3d 534, 543 (6th Cir. 2006) (granting summary judgment on Audi's claims against

WWW.AUDISPORT.COM using a disclaimer, and holding that "with respect to domain names, addition of characters along with the mark 'does not eliminate the likelihood of confusion.'") (citations omitted); *Volkswagen AG v. VOLKSWAGENTALK.COM*, 584 F.Supp.2d 879, 885 (granting summary judgment and holding that Volkswagen had "shown trademark infringement, as well as the elements necessary to prevail in an *in rem* action [for cyberpiracy] under the ACPA"); *General Motors Corp. v. E-Publications LLC*, 2001 WL 1798648 (E.D.Mich.) (entering a permanent injunction on GM's "claims for trademark dilution, trademark infringement, false designation of origin, false advertising, and cyberpiracy under the Lanham Act (15 U.S.C. § 1051 et seq.)" relating to WWW.RESTOREGM.COM and WWW.RESTOREGMMUSCLE.COM).

### 3. Volvo is likely to succeed on its claims relating to the bastardized or debased VOLVO IRON MARK LOGO®

Again, the law is well settled that an independent repair shop or unaffiliated third-party may not use the trademarked logos of an automobile manufacturer such as Volvo. *Volkswagen AG v. Uptown Motors*, 1995 WL 605605 (S.D.N.Y. 1995) (awarding VW and Audi $221,000.00 in damages as measured by service center's revenues during unauthorized display of VW EMBLEM® and AUDI RINGS® trademarks); *Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806 (2d Cir. 1999) (enjoining unauthorized use of manufacturer's "bar-and-shield" logo in signage and in advertisements); *Audi AG v. D'Amato*, 469 F.3d 534 (6th Cir. 2006) (enjoining use of Audi FOUR RINGS LOGO®).

The fact that Defendants have slightly altered the VOLVO IRON MARK LOGO® provides no defense. As noted by the First Circuit in a similar case, "the most successful form of copying is to employ enough points of similarity to confuse the public with enough points of difference to confuse the courts." *Boston Athletic Ass'n v. Sullivan*, 867 F. 2d 22, 30 (1st Cir.

1989). *See also, McCarthy on Trademarks and Unfair Competition*, § 23:20 (quoting *T & T Mfg. Co. v. A. T. Cross Co.*, 449 F. Supp. 813 (D.R.I. 1978))(stating "[t]o find trademark infringement only by exact identity and not where the junior user makes some slight modification would 'be in effect to reward the cunning infringer and punish only the bumbling one.'").

### 4. Volvo is likely to succeed on its false advertising claims relating to "Factory Trained" or "Certified Factory Trained"

As set forth above, Defendants falsely advertise that their mechanics are "Factory Trained" or "Factory Certified." To be considered "Factory Trained" or "Factory Certified" a technician must be employed by an authorized Volvo dealership and must be up-to-date on the very latest training modules. VC at ¶ 18. Thus, Defendants' advertisements are false and misleading because the public will erroneously believe that Defendants' mechanics are up-to-date on Volvo's most recent training modules.

The false advertising provisions of Section 43(a) forbid the use of any "false or misleading description of fact, or false or misleading representation of fact." 15 U.S.C. § 1125(a); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

### B. Volvo Is Likely to Suffer Irreparable Harm.

As set forth above and in the Verified Complaint, Volvo is being irreparably harmed because the unauthorized use and display of the VOLVO MARKS by Defendants lessens the capacity of the VOLVO MARKS to designate Volvo and the goods and services provided by Volvo and its authorized dealers. *Id.* at ¶ 27. Volvo is further being harmed because Volvo is not able to exercise any control over the quality of services and goods provided by Defendants to the public. *Id.* For example, if Defendants provide shoddy service, Volvo is irreparably harmed because the customers of such shoddy service will no longer associate the VOLVO MARKS with the high-quality service and goodwill associated with the VOLVO MARKS. <u>Id.</u> Volvo

also has no ability to demand or require that Defendants provide better quality services as Volvo has the ability to do with its authorized dealer body. Id. In short, if Volvo is not able to control the quality of the services and goods provided under the VOLVO MARKS by Defendants, Volvo will be irreparably harmed because Volvo's reputation for high-quality service and products will be damaged. Id.

The law is well settled that injury to both reputation and goodwill constitutes irreparable harm. *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603, (9th Cir. 1991); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001). As another court explained in a similar case:

> In the context of trademark litigation, "grounds for irreparable harm include loss of control of reputation, loss of trade, and loss of goodwill," regardless of whether the infringer is putting the mark to a good or favorable use. *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992). Liquid Glass's unauthorized use of the Porsche marks inhibits Porsche's ability to control which products [or services] its reputation and good will are being used to promote or endorse. This lack of control and potential damage to Porsche's reputation constitutes irreparable injury because monetary damages cannot adequately compensate for harm to good will or reputation.

*Liquid Glass Enters. v. Dr. Ing. h.c.F. Porsche AG*, 8 F. Supp.2d 398, 406 (D.N.J. 1998).

Preliminary injunctive relief is especially useful to prevent further irreparable injury pending a final resolution of the merits. As one prominent commentator has noted:

> In unfair competition cases a preliminary restraining order or preliminary injunction . . . is of special importance. As one court said: "If the complainants be not protected by preliminary injunction against such use,--if, in other words, that question be postponed to the final hearing--there is every inducement to the defendant to delay and prolong the litigation, continuing, meanwhile, the assaults upon the goodwill of the complainants, so that, even if final decree be at last rendered in favor of complainants, the goodwill will have been so seriously and irreparably injured, if not in great measure destroyed, as to leave the complainants practically without remedy."

4 *Callman on Unfair Competition, Trademarks and Monopolies* § 22.36, at 255-56 (citations omitted).

### C. The Balance of Equities Tips in Volvo's Favor.

Under these circumstances, the balance of hardships tips decidedly in Volvo's favor. Indeed, while the injury to Volvo is immeasurable and irreparable, the only "harm" to Defendants will be an injunction against further use of counterfeits or copies of the VOLVO MARKS. Any such "harm" to Defendants is easily calculable and cannot be deemed irreparable. *See Warner-Lambert v. Northside Dev.*, 86 F.3d 3, 8 (2d Cir. 1996) (noting that a plaintiff's "loss of consumer goodwill" associated with trademark infringement is "unquantifiable" and thus "satisfies the irreparable injury requirement," but that a defendant's "loss of profits on sales . . . is quantifiable" and thus may be compensated for by the plaintiff "if the injunction is found to have been granted in error").

### D. A Preliminary Injunction Is in the Public Interest.

The public interest also favors entry of a preliminary injunction in this case because the "[t]he public has an interest in the protection of trademarks and tradenames," *Hyatt Corp. v. Hyatt Legal Services*, 736 F.2d 1153, 1159 (7th Cir. 1984), and in "preventing consumer confusion and fraud," *Paisa v. N & G Auto*, 928 F. Supp. 1009, 1013 (C.D. Cal. 1996). *See also Brookfield Communications*, 174 F.3d at 1066 (noting the "public interest in protecting trademarks").

## IV. THE COURT SHOULD WAIVE ANY BOND

Under Fed.R.Civ.P. 65(c), the purpose of a bond is to provide security "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." The Court has discretion to require a nominal bond or

to waive the bond entirely. *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir.2005). Waiver of the bond is appropriate where the non-moving party fails to present any "evidence the party will suffer damages from the injunction." *See Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000) (explaining that "the purpose of ... a bond is to cover any costs or damages suffered by [the non-moving party] arising from a wrongful injunction" and affirming the waiver of the bond requirement where the non-moving party "did not show that there would be any"); *see also Halo Management, LLC v. Interland, Inc.*, 308 F.Supp.2d 1019, 1027 (N.D.Cal. 2003) (holding, in Lanham Act case, that "the bond amount may be zero where there is no evidence that a party will suffer damages from the issuance of an injunction"). For example, the court in *Manny's Porshop* did not require a bond of Porsche when it granted a preliminary injunction. *Manny's Porshop*, 972 F.Supp. at 1133. If a bond is required, it should be minimal. For example, in granting a preliminary injunction for Porsche in *Liquid Glass*, the court required a bond only in the amount of $10,000. *Liquid Glass*, 8 F.Supp.2d at 408.

Other than some nominal costs in changing its signage, website, and advertisements, Defendants cannot claim any potential, monetary harm from the proposed preliminary injunction. Thus, a bond should not be required of Volvo.

## V.   CONCLUSION

For the foregoing reasons, the Court should enter a preliminary injunction enjoining Defendants from infringing the VOLVO MARKS.

////

////

**RESPECTFULLY SUBMITTED** this __15__ day of November 2011,

        **HOWARD PHILLIPS & ANDERSEN**
        Gregory D. Phillips
        Scott R. Ryther

        **GOOD LAW, P.C.**

        _/s/ Gregory E. Good_
        Gregory E. Good
        Attorneys for Plaintiffs